UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH T.,[1]

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

22-CV-6209MWP

**PRELIMINARY STATEMENT**

        Plaintiff Joseph T. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 11).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 6, 7).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

> (1)　whether the claimant is currently engaged in substantial gainful activity;
>
> (2)　if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)　if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

      (4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

      (5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.    <u>The ALJ's Decision</u>

      In her decision, the ALJ followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 25, 2019, the application date.  (Tr. 12).[2]  At step two, the ALJ concluded that plaintiff had the severe impairments of left knee osteoarthritis with total arthroplasty, obstructive sleep apnea, insomnia, morbid obesity, unspecified mood disorder, bipolar disorder, depressive disorder, generalized anxiety disorder, personality disorder, and impulse control disorder.  (Tr. 12).  The ALJ also found that plaintiff suffered from several nonsevere impairments.  (*Id.*).  At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings.  (Tr. 13-15).  With respect to plaintiff's mental impairments, the

---

[2]  The administrative transcript (Docket # 5) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

ALJ considered the four broad categories of mental functioning.  (*Id.*).  Specifically, the ALJ determined that plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself.  (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform less than the full range of work at the sedentary exertional level with certain mental limitations.[3]  (Tr. 15-19).  Specifically, the ALJ found that plaintiff could perform simple, unskilled work requiring no more than a specific vocational preparation ("SVP") of 2 and involving only frequent interaction with supervisors, occasional brief and superficial interaction with coworkers, and no interaction with the public.  (*Id.*).

At step four, the ALJ found that plaintiff had no past relevant work.  (Tr. 19).  At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as dowel inspector, final assembler, and ampoule sealer.  (Tr. 20).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 21).

III.   **Plaintiff's Contentions**

Plaintiff argues that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 6-1, 8).  Specifically, plaintiff maintains that the ALJ's mental RFC assessment is flawed because the ALJ failed to adequately explain how he assessed plaintiff's social interaction limitations and

---

[3]  Plaintiff's contentions relate only to the mental component of the ALJ's RFC determination. Therefore, I address only the mental portion of the RFC.  *See, e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

failed to adequately account for plaintiff's history of "aggression and violence." (Docket ## 6-1 at 6-8; 8 at 1-2). In addition, plaintiff argues that the mental RFC is not supported by substantial evidence because the ALJ improperly found the opinions of non-examining physicians more persuasive than the opinion provided by the examining consultative physician. (Docket # 6-1 at 9-10).

IV.   **Analysis**

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

In formulating plaintiff's mental RFC, the ALJ considered three medical opinions assessing plaintiff's mental limitations. On February 25, 2020, psychologist Adam Brownfeld, PhD, conducted a consultative psychiatric evaluation of plaintiff and opined that he would have mild limitations in his ability to apply complex directions and instructions; use reasoning and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and

the public; sustain concentration and perform a task at a consistent pace; and sustain an ordinary routine and regular attendance at work.  (Tr. 935-38).  Brownfeld also opined that plaintiff would be markedly limited in his ability to regulate emotions, control behavior, and maintain well-being.  (*Id.*).  According to Brownfeld, plaintiff had no limitations in his ability to understand, remember, and apply simple directions and instructions; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions.  (*Id.*).

On March 2, 2020, state reviewing psychologist L. Blackwell, PhD, reviewed plaintiff's medical records, including the results of the consultative evaluation performed by Brownfeld, and concluded that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.  (Tr. 89-91).  According to Blackwell, plaintiff had no limitations in his ability to carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (*Id.*).

7

Similarly, on July 8, 2020, state reviewing psychologist L. Haus, PsyD, reviewed plaintiff's medical records, including Brownfeld's evaluation, and opined that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (Tr. 106-07). According to Haus, plaintiff had no limitations in his ability to carry out very short and simple instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (*Id.*).

In her decision, the ALJ concluded that plaintiff was capable of frequently interacting with supervisors but unable to interact with the public. (Tr. 15). Plaintiff maintains that remand is warranted because the ALJ failed to explain why she assessed differing capacities for interaction for these distinct groups. I disagree.

As an initial matter, the evidence of record does not support a finding of more than moderate limitations in plaintiff's ability to engage in social interactions with supervisors,

coworkers, and the public.  Indeed, the non-examining reviewing physicians assessed at most

moderate limitations in social functioning, and the examining physician opined that plaintiff had

only mild limitations in his ability to engage in work-related social interactions.  Such interaction

limitations are generally accounted for adequately by restricting an individual to unskilled work

– a limitation contained in the RFC formulated by the ALJ in this case.  *See Justine G. v.*

*Comm'r of Soc. Sec.*, 2023 WL 2595011 (W.D.N.Y. 2023) ("[a] limitation to unskilled work can

adequately account for a claimant's moderate limitation in interacting with others") (collecting

cases), *aff'd*, 2024 WL 886596 (2d Cir. 2024) (summary order); *Wightman v. Comm'r of Soc.*

*Sec.*, 2019 WL 2610712, *2 (W.D.N.Y. 2019) ("[i]t is well-settled that moderate limitations in

social interaction and other areas of work-related functioning nonetheless permit the

performance of unskilled work, such that a limitation to unskilled work is generally sufficient to

accommodate those limitations").  In addition to limiting plaintiff to unskilled work, the ALJ

assessed specific limitations with respect to plaintiff's ability to interact with other individuals in

the workplace.

    In challenging the ALJ's determination, plaintiff fails to identify substantial

evidence in the record demonstrating that the interaction limitations assessed by the ALJ were

not sufficiently restrictive; rather, he faults the ALJ for failing to explain sufficiently why she

assessed greater limitations in plaintiff's ability to interact with the public than with supervisors.

(Docket ## 6-1 at 6-8; 8 at 1-2).  The ALJ's determination to limit plaintiff to no contact with the

public, however, is more restrictive than the limitations identified in the medical opinions and, if

anything, is more favorable to the plaintiff.  Accordingly, any error by the ALJ in this regard is

harmless.  *See Melissa L. v. Comm'r of Soc. Sec.*, 2024 WL 2923011, *3 (W.D.N.Y. 2024)

("[t]he fact that the ALJ went further than the medical opinions required, and limited [p]laintiff

to brief and superficial interaction with the public, is not a basis for remand"); *Coughlin v. O'Malley*, 2024 WL 833246, *6 (E.D.N.Y. 2024) ("[t]he [c]ourt . . . respectfully rejects [plaintiff's] suggestion that the ALJ's finding that [plaintiff] could never interact with the public undermined his finding that she could occasionally interact with supervisors and coworkers[;] . . . [t]he ALJ did not err by applying caution and making [plaintiff's] RFC more restrictive, even if he did not explain exactly what evidence supported his findings regarding interactions with each specific group of people") (internal quotations and brackets omitted); *Cynthia E. v. Comm'r of Soc. Sec.*, 2023 WL 8432332, *5 (N.D.N.Y. 2023) ("the ALJ's RFC limitation to no contact with the public is more restrictive than [the medical opinions of record] and more favorable to plaintiff[;] . . . [p]laintiff did not explain . . . why the ALJ's more restrictive limitation is harmful"); *Jiminez v. Colvin*, 2018 WL 459301, *3 (W.D.N.Y. 2018) ("[w]hile there is substantial evidence in the record to support a finding that plaintiff has moderate limitations in relating adequately to others . . . , the ALJ fails to sufficiently support or explain his finding that plaintiff could have no contact with the general public (rather than occasional contact, as with coworkers and supervisors)[;] . . . [h]owever, because the RFC described by the ALJ was erroneous only to the extent that it may have incorporated *greater* limitations than are supported by the evidence of record rather than fewer, that error is harmless").

Similarly unavailing is plaintiff's challenge that the ALJ failed to adequately consider his subjective reports of violence and aggression. (Docket ## 6-1 at 8; 8 at 1-2). In her decision, the ALJ explicitly discussed treatment notes documenting plaintiff's self-reports of a history of verbal aggression, threats, and physical assaults towards others, but noted the record contained little objective evidence that plaintiff continued to engage in such behavior. Review of plaintiff's treatment notes demonstrate that he was generally cooperative with treating providers

and, although irritable at times, he did not engage in any aggressive or assaultive behavior.

Indeed, although plaintiff reported a history of verbal and physical aggression, his treatment

notes reflect that he had not committed any violent acts in "years." (Tr. 700, 725). In any event,

"'an ALJ does not have to state on the record every reason justifying a decision' or 'discuss

every piece of evidence submitted.'" *Gauda v. Comm'r of Soc. Sec.*, 2024 WL 886595, *2 (2d

Cir. 2024) (summary order) (quoting *Brault v. Soc. Sec. Admin*, 683 F.3d 443, 448 (2d Cir.

2012)); *see Price v. Comm'r of Soc. Sec.*, 2020 WL 4288247, *5 (W.D.N.Y. 2020) ("an ALJ is

not required to discuss every piece of evidence [and] lack of discussion does not imply the ALJ

did not consider the evidence"). I find that the ALJ's decision demonstrates that she sufficiently

reviewed and discussed the relevant evidence of record and that remand is not warranted on this

basis.

Finally, I reject any contention that remand is warranted because the ALJ

determined that the opinions authored by the non-examining physicians were more persuasive

than the opinion authored by the examining consultant. *See Christopher P. v. Comm'r of Soc.

Sec.*, 2023 WL 3984830, *5 (W.D.N.Y. 2023) ("[t]he regulations direct an ALJ not to 'defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion[] . . .

the ALJ did not commit legal error in finding the opinion of [the] non-examining source . . .

persuasive") (citing 20 C.F.R. § 416.920c); *Melissa F. v. Comm'r of Soc. Sec.*, 2021 WL

3887256, *6 (W.D.N.Y. 2021) ("the applicable regulations do not create an automatic hierarchy

for treating sources, examining, sources, then nonexamining sources to which ALJs must

mechanically adhere[;] . . . [t]herefore, [p]laintiff's argument, that the ALJ erred in relying on the

opinion of a non-examining source over an examining source fails") (internal quotations and

brackets omitted).

## <u>CONCLUSION</u>

After a careful review of the entire record, this Court finds that the

Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a

matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED**.  Plaintiff's

motion for judgment on the pleadings **(Docket # 6)** is **DENIED**, and plaintiff's complaint

(Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
         June 28, 2024